# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **Mario Alberto Simbaqueba,** | : | |
| Plaintiff, | : | Case No. 2:11-cv-62 |
| v. | : | Judge George C. Smith |
| **United States Department of Defense,** | : | Magistrate Judge Kemp |
| | : | |
| Defendant. | | |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 13), to which no opposition has been filed. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Plaintiff Mario Alberto Simbaqueba brought this action against Defendant United States Department of Defense ("DoD") to compel compliance with the Freedom of Information Act, 5 U.S.C. §552 ("FOIA").

The following facts are taken from two declarations provided by the DoD. The first is a declaration of John R. Crane, the Assistant Inspector General for the Office of Communications and Congressional Liaison in the Office of the Inspector General of the Department of Defense ("DoD IG"). (Ex. 1 to Motion for Summary Judgment, herinafter "Ex. 1," ¶ 1). Mr. Crane is the FOIA Appellate Authority for DoD IG who responds to the FOIA appeals received by DoD IG. (Ex. 1, ¶ 1). The second is a declaration of James E. Olmstead, special agent of the Defense Criminal Investigative Service ("DCIS") within the DoD IG and lead case agent in the DCIS investigation of Mr. Simbaqueba and Ms. Valero. (Ex. 2 to Motion for Summary Judgment, herinafter "Ex. 2," ¶¶ 1-2). Mr. Simbaqueba has provided no countervailing evidence as to these facts.

In April 2007, DCIS opened an investigation of Mr. Simbaqueba and Ms. Neyla Alexandra Valero relating to unauthorized access to official Defense Finance and Accounting

Service personal electronic pay accounts of a number of military service members. (Ex. 1, ¶¶ 7-8.) Mr. Simbaqueba was indicted on November 15, 2007 in federal court on counts including conspiracy to commit fraud, access device fraud, and aggravated identity theft. (*Id.* at ¶ 10.) He pled guilty to all counts in the indictment and was sentenced to nine years in prison. (*Id.* at ¶¶ 10-11.)

Ms. Valero was also indicted in federal court on the same day. (Ex. 1, ¶ 12.) She was charged with conspiracy to commit fraud and access devise fraud, but she fled the country before her indictment and is currently a fugitive whom the United States Government intends to prosecute upon apprehension. (*Id.*)

On June 16, 2009, the DoD IG received a FOIA request from Mr. Simbaqueba seeking records pertaining to himself. (Ex. 1, ¶ 13.) Mr. Simbaqueba addressed his FOIA request to DCIS, which is the only DoD IG component that conducts criminal investigations or maintains records of criminal investigations conducted by DoD IG, and which has "statutory law enforcement authority" to investigate allegations of civil and criminal violations of United States laws including those at issue in the investigation of Mr. Simbaqueba and Ms. Valero. (*Id.* at 6, 13-14, 29.) For that reason and because the DoD IG determined that DCIS was the only DoD IG component reasonably likely to have records responsive to the request, the DoD IG tasked DCIS to conduct a search for responsive material. (*Id.*)

Accordingly, DCIS conducted a search in two electronic databases using Mr. Simbaqueba's last name. (*Id.* at ¶¶ 16, 18-19.) The first database was the DCIS case management system, which includes information on all DCIS cases dating back to 1982. (*Id.* at ¶ 17.) The cases in that database are titled in the name of the subject or co-subjects of the investigation, and DCIS Special Agents are required to input data into that database from receipt of the initial investigation through closing. (*Id.*) The database includes information on the status of an investigation and the DCIS office responsible for the investigation, and as a result of the search, DCIS was able to determine that Mr. Simbaqueba's case was open and that Columbus, Ohio was the responsible field office. (*Id.* at ¶ 18.) "Records related to open cases are maintained in the investigative case file at the responsible DCIS field office." (*Id.* at ¶ 19.) The second database is a central index which only maintains limited information about the case, but

2

DCIS customarily searches this database in response to FOIA requests "as a cross-check of case status information in [the first database searched.]" (*Id.*) The search of this database confirmed the open investigation in the Columbus, Ohio field office. (*Id.*)

In addition, Mr. Olmstead declared that he was the lead case agent in the investigation of Mr. Simbaqueba, the investigation is active and continuing, the investigative case file is maintained and located at the Columbus, Ohio DCIS Post of Duty and contains documents in ten volumes of legal-size green cardboard file folders and an accordion folder. (Ex. 2, ¶¶ 2, 7-8.) Mr. Crane stated that "[t]he Chief, DoD IG FOIA Office, traveled to Columbus, Ohio; reviewed the case file on a document-by-document basis; and determined that the documents in the investigative file were responsive to [Mr. Simbaqueba's] request." (Ex. 1, ¶ 33.) This case file and the investigation of Ms. Valero's involvement in the computer fraud and identity theft scheme remain active and open pending prosecution of Ms. Valero. (Ex. 1, ¶ 7; Ex. 2, ¶ 7.)

On June 23, 2009 the DoD IG made an official determination that records responsive to Mr. Simbaqueba's request were part of the open investigative case file, and it would not release them pursuant to a number of specific FOIA exemptions, including Exemption 7(A), which exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); (Ex. 1, ¶ 20). Mr. Simbaqueba administratively appealed this determination and that appeal was denied. (Ex. 1, ¶¶ 20, 22). Ultimately, Mr. Simbaqueba challenged the denial of his appeal by filing an action in federal court, which is presently before this Court. In this action, Mr. Simbaqueba alleges that the DoD violated the FOIA by improperly asserting FOIA exemptions in order to withhold responsive agency records.

Since the initiation of this action, DoD IG has released some documents from the case file that it determined could be released without interfering with the open investigation. (Ex. 1, ¶¶ 23-26). The released documents consisted of publicly available information such as news articles, press releases, court documents, and DCIS case reports summarizing the publicly available material, as well as DCIS internal communications on administrative matters. (Ex. 1, ¶¶ 26, 34).

DoD has filed a motion for summary judgment arguing that it has now released certain

public portions of the open case file, and that the remaining portions of the open file are being lawfully withheld pursuant to FOIA exemptions. Regarding the unreleased documents in the case file, Mr. Crane of the DoD IG has grouped documents into five functional categories that he describes in his declaration: 1) DCIS case reports, 2) internal DCIS case communications, 3) investigative information related to other federal agencies 4) investigative information related to state and local law enforcement, and 5) other investigative information. (Ex. 1, ¶¶ 35-43.) DoD IG asserts that all of the information currently withheld regarding the open investigation is exempt from disclosure under (b)(7)(A), but also argues that some records should also be exempted under (b)(3), (5), (6), (7)(C) and (7)(E) of the FOIA. Regarding the exemption under section (7)(A), Mr. Crane has stated that release of these categories of information "would be premature and likely to cause harm" because "[o]nce documents are released into the public domain . . . [they] would] reasonably be expected to reach Ms. Valero, thus allowing her to critically analyze the information in these documents . . . [and] use the released information to her advantage to frustrate prosecution." (Ex. 1, ¶ 45.) Mr. Crane then lists seven specific potential harms that the release of this information will cause to the investigation:

    a) the premature revelation of the government's case against Ms. Valero, to include the nature, scope, and direction of its investigation and leads pursued;

    b) the identification of individuals and potential witnesses who possess information relative to the investigation and possible harm to, or intimidation of, these individuals and potential witnesses;

    c) the use of released information to establish defenses or fraudulent alibis;

    d) the use of released information to counteract evidence developed by investigators, alter or destroy potential evidence, create false evidence, or frustrate investigative techniques;

    e) the identification of locations in the United States, as well as foreign countries, where DCIS has and is focusing its investigative efforts, to include collection of evidence;

    f) the use of released information by Ms. Valero to assess the strength of the government's case and likelihood of successful prosecution, which assessment may be used against the government in any plea negotiations; and

    g) the use of released information by Ms. Valero to maintain her current status as an indicted fugitive from justice.

4

(Ex. 1, ¶ 45.)

Mr. Simbaqueba filed a motion to compel seeking to have DoD file a document-by-document description of the documents withheld, and after that motion was fully briefed, the Magistrate Judge denied that motion and gave Mr. Simbaqueba an additional twenty-one days to respond to the motion for summary judgment. Mr. Simbaqueba never filed a response to the motion for summary judgment. Accordingly, the facts before the court are those set forth in the declarations attached to the motion for summary judgment.

## II.  LEGAL STANDARD

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact

a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

In accordance with the FOIA, this Court shall review the DoD's denial of portions of Mr. Simbaqueba's FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B); *Rugiero v. U.S. Dept. of Justice,* 257 F.3d 534, 543 (6th Cir. 2001). "In response to a FOIA request, an agency must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information," and "the burden is on the agency to establish the adequacy of its search." *Rugiero*, 257 F.3d at 547 (citation omitted). The FOIA generally requires federal agencies to promptly comply with requests to make reasonably-described records available. 5 U.S.C. § 552(a)(3)(A). Under the Act, "an agency may not withhold or limit the availability of

6

any record, unless one of the FOIA's specific exceptions applies." *Rugerio*, 257 F.3d at 543 (citing 5 U.S.C. § 522(d)). "These exceptions are to be narrowly construed, and the burden is on the agency to justify its action." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)) (internal citations omitted).

### A. Adequacy of Agency's Search

The DoD may carry its burden of demonstrating the adequacy of its search through affidavits or declarations "that provide reasonable detail of the scope of the search," as long as there is no "countervailing evidence or apparent inconsistency of proof." *Rugerio*, 257 F.3d at 547 (citation omitted).

Here, the DoD provided two declarations providing evidence of the adequacy of the search. According to the first declaration by Mr. Crane, Mr. Simbaqueba's request was directed to the Defense Criminal Investigative Service ("DCIS"), and "DCIS is the only DoD IG component reasonably likely to have records responsive to the request because DCIS is the only DoD IG component that conducts criminal investigations or maintains records of criminal investigations conducted by DoD IG." (Ex. 1, ¶¶ 13-14.) Accordingly, DCIS conducted a search in two electronic databases using Mr. Simbaqueba's last name. (*Id.* at ¶¶ 16, 18-19.) The first database was the DCIS case management system, which includes information on all DCIS cases dating back to 1982. (*Id.* at ¶ 17.) The cases in that database are titled in the name of the subject or co-subjects of the investigation, and DCIS Special Agents are required to input data into that database from receipt of the initial investigation through closing. (*Id.*) The database includes information on the status of an investigation and the DCIS office responsible for the investigation, and as a result of the search, DCIS was able to determine that Mr. Simbaqueba's case was open and that Columbus, Ohio was the responsible field office. (*Id.* at ¶ 18.) "Records related to open cases are maintained in the investigative case file at the responsible DCIS field office." (*Id.* at ¶ 19.) The second database is a central index which only maintains limited information about the case, but DCIS customarily searches this database in response to FOIA requests "as a cross-check of case status information in [the first database searched.]" (*Id.*) The search of this database confirmed the open investigation in the Columbus, Ohio field office. (*Id.*)

The second declaration, by Mr. Olmstead, stated that he was the lead case agent in the investigation of Mr. Simbaqueba, the investigation is active and continuing, the investigative case

7

file is maintained and located at the Columbus, Ohio DCIS Post of Duty and contains documents in ten volumes of legal-size green cardboard file folders and an accordion folder. (Ex. 2, ¶¶ 2, 7-8.) Mr. Crane's declaration stated that "[t]he Chief, DoD IG FOIA Office, traveled to Columbus, Ohio; reviewed the case file on a document-by-document basis; and determined that the documents in the investigative file were responsive to [Mr. Simbaqueba's] request." (Ex. 1, ¶ 33.)

Mr. Simbaqueba has provided no countervailing evidence relating to the search procedure, nor has the Court found any inconsistency in the DoD's declarations that would undermine its evidence regarding the adequacy of the search. Accordingly, the Court finds that DoD has met its burden of proving the adequacy of its search.

### B. Agency's Claim of Exemption

The second question before the Court on this motion for summary judgment is whether the DoD appropriately withheld or limited the availability of certain records pursuant to one of the FOIA's specific exemptions. District courts must make this determination by reviewing the affidavits or declarations that justify the withholding of documents responsive to a FOIA request and determining whether such justifications are reasonable and consistent with the law governing application of the Act's exemptions. *Rugerio*, 257 F.3d at 552. The Act's exemptions are narrowly construed. *Id.* at 543 (citations omitted). The agency has the burden of demonstrating that the materials sought were properly withheld or restricted due to an exemption. *Vaughn v. United States*, 936 F.2d 862, 866 (6th Cir. 1991) (citation omitted).

The DoD contends that all of the records that have been redacted before being made available or that have not been made available at all were appropriately withheld or limited pursuant to Exemption 7(A) of the FOIA. Section 552(b)(7) provides in relevant part as follows:

> (b) This section does not apply to matters that are--
> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings . . . .

5 U.S.C.A. §552(b)(7). The Court of Appeals has established a *per se* rule that all documents compiled by a law enforcement agency meet the threshold requirement that the records or

8

information were compiled for law enforcement purposes. *Rugiero*, 257 F.3d at 550. DCIS is the criminal investigative arm of DoD and has "statutory law enforcement authority," to investigate allegations of civil and criminal violations of United States laws including those at issue in the investigation of Mr. Simbaqueba and Ms. Valero. (Ex. 1, ¶¶ 6, 29); *see also Crowell & Moring v. Department of Defense*, 703 F. Supp. 1004, 1011 (D.D.C. 1989) (noting that DCIS is a criminal law enforcement agency). Because DCIS compiled the documents at issue, the only question is whether production of such records or information "could reasonably be expected to interfere with enforcement proceedings."

In order for there to be a reasonable expectation that production of documents may interfere with enforcement proceedings, there must be a "reasonable chance that an enforcement proceeding will occur . . . ." *Dickerson v. Department of Justice*, 992 F.2d 1426, 1430 (6th Cir. 1993) (internal quotations and citations omitted). Here the declarations provide ample evidence that DCIS has an open investigation and investigative case file related to Mr. Simbaqueba and Ms. Valero, and this is further supported by the evidence that Ms. Valero was indicted but fled the country before her indictment and that she is currently a fugitive whom the United States Government intends to prosecute upon apprehension. (Ex. 1, ¶¶ 7, 12; Ex. 2, ¶ 7.)

In determining whether Exemption 7(A) applies, some of the types of expected interference with enforcement proceedings that the Court of Appeals has recognized as justifying the withholding of documents include the following: the possibility that perpetrators of a crime, by learning of the investigative leads being pursued, the prime suspects, and the nature of the evidence, could "take steps to destroy or tamper with evidence, intimidate witnesses or construct a false alibi . . . ."; the possibility that public disclosure of the investigation would discourage new informants from coming forward; and the possibility that moving factual information into the public domain will make it difficult to verify statements by future witnesses. *Dickerson v. Department of Justice*, 992 F.2d 1426, 1433 (6th Cir. 1993).

Here the DoD has provided evidence of several types of expected interference with enforcement proceedings, including several of the ones recognized by the Court of Appeals in *Dickerson*. (*See* Ex. 1, ¶ 45(b)-(d) regarding the potential harm to or intimidation of potential witnesses, the potential manufacturing of false defenses or alibis, and the potential for altering or

9

destroying potential evidence, manufacturing false evidence, or frustrating investigative techniques.) In addition, the DoD has provided evidence that the release of the documents at issue could be used by Ms. Valero to strengthen her position in plea negotiations and, more importantly, could assist her in her efforts to remain at large as a fugitive avoiding prosecution. (*Id*. at ¶ 45(f)-(g).) As a general matter, these types of expected interference justify withholding documents pursuant to Exemption 7(A). Accordingly, the Court now turns to examining whether they justify withholding the specific documents at issue in this case.

Here, the DoD discusses the potential interference with ongoing enforcement proceedings in connection with five categories of documents. The evidence provided in the DoD's declarations regarding these categories is sufficiently specific to permit the Court to "make a reasoned, independent assessment" of the applicability of Exemption 7(A). *Vaughn*, 936 F.2d at 867. As the Magistrate Judge pointed out in his October 13, 2011 Order denying Mr. Simbaqueba's motion to compel the DoD to produce a comprehensive document-by-document index known as a *Vaughn* Index:

> No particular method is mandated, as long as the Court can make a reasoned, independent assessment of the claimed exemption. *Dickerson v. Department of Justice*, 992 F.2d 1426, 1431 (6th Cir. 1993).
>
> The government does not need to justify its withholdings document-by-document, but if it chooses to rely on categorical determinations, its "definitions of relevant categories must be sufficiently distinct to allow a court to determine, as to each category, whether the specific claimed exemption(s) are properly applied." *Vaughn*, 936 F.2d at 868. When the exemption concerns (b)(7)(A), the court may find it more practical to make generic determinations about interference with enforcement proceedings and affidavits can provide an adequate basis for making such determinations. *Dickerson*, 992 F.2d at 1431.

(10/13/11 Order, Doc. 17.)

In its declaration by Mr. Crane, the DoD describes five functional categories of documents, each of which includes information with the potential to interfere with enforcement proceedings in at least one of the ways described by the DoD in paragraph 45 of the same declaration. The first category of documents, DCIS case reports, include information regarding the evidence, subjects, victims, and investigatory leads, among other types of information. (Ex. 1, ¶¶ 37-39.) The release of these types of information involve the potential for witness intimidation

or harm, manufacture of false defenses or alibis, and alteration or destruction of potential evidence, manufacture of false evidence, or frustration of investigative techniques. The second category of documents, which includes only two documents, includes investigative analysis by DCIS personnel and personally identifying information regarding persons of interest. (*Id.* at ¶ 40.) The release of these types of information could permit Ms. Valero to frustrate DCIS's investigative techniques and otherwise tamper with or manufacture false evidence. The third category of documents, investigative information related to other federal agencies, includes the types of information present in the first category of documents and poses the same risks of interference. (*Id.* at ¶ 41.) Additionally, the third category of documents includes the results of background and other checks concerning suspects that could be used by Ms. Valero to remain a fugitive. The fourth category of documents, investigative information related to state and local law enforcement, includes the same types of information (albeit from different sources) as the third category of documents and poses the same risks of interference. (*Id.* at ¶ 42.) Finally, the fifth category of documents, other investigative information, includes information about victims and other potential witnesses, information about evidence, and information about investigative leads and the results of DCIS's follow ups to investigative leads. (*Id*. at ¶ 43.) The release of these types of information involve the potential for witness intimidation or harm, manufacture of false defenses or alibis, and alteration or destruction of potential evidence, manufacture of false evidence, or frustration of investigative techniques. Accordingly, DoD has provided evidence that each of the five categories of documents at issue was properly withheld pursuant to Exemption 7(A).

## IV. DISPOSITION

Based on the foregoing, Defendant's motion for Summary Judgment (Doc. 13) is **GRANTED**.

**IT IS SO ORDERED.**

/s/     George C. Smith
GEORGE C. SMITH
UNITED STATES DISTRICT JUDGE